PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4255

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ERIC TYRELL JOHNSON, a/k/a E,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Deborah K. Chasanow, Senior District Judge. (1:20-cr-00038-DKC-3)

Argued: May 8, 2025                                   Decided: August 5, 2025

Before HARRIS, RICHARDSON, and HEYTENS, Circuit Judges.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Richardson and Judge Heytens joined.

**ARGUED:** Sylvia Olga Tsakos, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Washington, D.C., for Appellant. Adeyemi Adenrele, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Marjorie Grismer, Chicago, Illinois, Shay Dvoretzky, Parker Rider-Longmaid, Caitlin M. Hird, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C.; Gary E. Proctor, Jennifer Smith, LAW OFFICES OF GARY E. PROCTOR, LLC, Baltimore, Maryland, for Appellant. Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

PAMELA HARRIS, Circuit Judge:

Law enforcement officers suspected that Eric Tyrell Johnson was involved in a drug trafficking scheme. Before seeking a warrant, they investigated by conducting a warrantless dog sniff for contraband at the front door of Johnson's apartment, in the hallway of a large, multi-unit building. Based in part on a positive alert, the police then obtained a warrant to search the apartment and uncovered drugs, guns and other incriminating evidence. After the district court denied Johnson's motion to suppress that evidence as fruit of a Fourth Amendment violation, Johnson was convicted of drug- and gun-related offenses.

On appeal, Johnson argues that the district court erred in denying his motion to suppress. According to Johnson, the warrantless dog sniff at his apartment door violated the Fourth Amendment on two separate grounds: the police used a trained drug-detection dog to access details of his home, otherwise unavailable from the outside, in which he has a reasonable expectation of privacy; and the police intruded onto the "curtilage" of his home when they positioned the dog immediately outside his apartment door. For the reasons given below, we disagree on both counts, and therefore affirm the judgment of the district court.

I.

A.

In March 2019, a Narcotics Task Force in Washington County, Maryland, working with the federal Drug Enforcement Administration, began investigating a drug trafficking

2

organization suspected of selling fentanyl and heroin in Maryland and West Virginia. The investigators conducted an extensive wiretap and surveillance operation that led them to suspect defendant Eric Tyrell Johnson was trafficking drugs from Apartment 201 in a large multi-unit complex called Greenwich Place in Owings Mills, Maryland.[1]

Agent Jasen Logsdon of Washington County, who was leading the investigation, decided to conduct a dog sniff at Johnson's apartment to confirm – or dispel – those suspicions before seeking a search warrant for the premises. On August 7, 2019, at approximately 3:00 a.m., Logsdon and his certified canine detection team, with the permission of building management, entered the Greenwich Place apartment building.

Apartment 201 was located in a long hallway on the building's second floor, near the elevators. As the district court would later find, that meant other second-floor residents would routinely walk past Johnson's door on their way to and from the elevators. Johnson's apartment was recessed from the common hallway by approximately three and a half feet, and there was nothing in the area in front of the apartment door at the time of the dog sniff.

The trained drug-detection dog conducted a "free air scan" of Apartment 201's front door and alerted to the odor of illegal drugs in the area of the lower door seam. The next day, law enforcement officers applied for a warrant to search Apartment 201, relying in part on the dog's positive alert. The warrant was granted, and police searched the

---

[1] On appeal of a denied motion to suppress, this court reviews the facts in the light most favorable to the government. *United States v. Rush*, 808 F.3d 1007, 1010 (4th Cir. 2015).

3

apartment on August 12, 2019.  The search uncovered a heroin-fentanyl powder mixture, a handgun, ammunition, cell phones, cash, and other items indicative of drug-dealing.

## B.

A federal grand jury indicted Johnson along with several co-defendants, charging Johnson with three counts:  conspiracy to distribute and possess with intent to distribute fentanyl and heroin, in violation of 21 U.S.C. § 846; possession with intent to distribute fentanyl and heroin, in violation of 21 U.S.C. § 841(a)(1); and unlawful possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

Johnson moved to suppress the evidence recovered from his apartment, arguing that it was fruit of a Fourth Amendment violation for two separate and alternative reasons. First, citing *Kyllo v. United States*, 533 U.S. 27 (2001), and Justice Kagan's concurrence in *Florida v. Jardines*, 569 U.S. 1, 12 (2013), Johnson argued that the dog sniff constituted a search under the "reasonable expectation of privacy" standard because the police used a specialized device (the trained dog) to discover details of his home (the presence of drugs) that would otherwise have been unavailable absent a physical intrusion into the apartment. Because the police had no warrant for that search, Johnson finished, it violated the Fourth Amendment.  Second, this time pointing to the majority opinion in *Jardines*, 569 U.S. at 1, Johnson contended that the dog sniff violated the Fourth Amendment under a property-based approach because it involved an unlicensed physical intrusion onto the "curtilage" of his home – with the "curtilage" being the area of the apartment-building hallway just outside Johnson's door.

4

The district court was persuaded by neither argument. *United States v. Nelson*, No. 20-cr-0038-DKC-3, 2022 WL 2484143, at *18 (D. Md. July 6, 2022).[2] A dog sniff does not violate any reasonable expectation of privacy, the court held, because an alert by a trained dog exposes only the presence of illegal narcotics, in which there can be no legitimate privacy interest. *Id.* Nor, the court held, did the part of the common hallway in front of Johnson's apartment door qualify as "curtilage," protected from police intrusion under the Fourth Amendment. The court agreed with the government that Johnson "had no property based right outside the apartment door." *Id.* at *17. Instead, the court reasoned, the hallway was regularly accessed by other tenants and by building cleaning staff, and consent to enter the building by other members of the public was "apparently [] given routinely upon request." *Id.* Under those circumstances, the common hallway – including the area just outside Johnson's door – did not qualify as "curtilage" of the home from which police were excluded.

Johnson proceeded to trial.[3] A jury convicted Johnson on all counts, and the district court sentenced him to 150 months in prison. Johnson timely appealed, challenging only the denial of his motion to suppress.

---

[2] The district court addressed Johnson's motion to suppress together with motions filed by multiple co-defendants, including named co-defendant Jeroam Edwin Nelson, Jr. *See Nelson*, 2022 WL 2484143, at *1.

[3] Johnson was tried alongside co-defendant Jarvis Antonio Coleman-Fuller, and their appeals were initially consolidated. This court subsequently granted the defendants' motion to file separate briefs, and then affirmed Coleman-Fuller's conviction and sentence in a separate opinion, *United States v. Coleman-Fuller*, No. 23-4237, 2025 WL 101067 (4th Cir. Jan. 15, 2025).

## II.

"When reviewing a ruling on a suppression motion, we review the district court's legal determinations de novo and factual findings for clear error." *United States v. Rush*, 808 F.3d 1007, 1010 (4th Cir. 2015). Where, as here, "the motion has been denied, we review the evidence in the light most favorable to the government." *Id.*

The question in this case is whether the dog sniff at Johnson's apartment door constituted a "search" within the meaning of the Fourth Amendment.[4] Johnson argues that it did, drawing on two lines of Fourth Amendment cases. The first, which traces back to *Katz v. United States*, 389 U.S. 347 (1967), applies the familiar "reasonable-expectations test," under which a search occurs when government conduct violates a "reasonable expectation of privacy." *See United States v. Jackson*, 728 F.3d 367, 374 (4th Cir. 2013) (describing *Katz* standard). The second, sometimes referred to as a "property-based" approach, identifies as a search any unlicensed physical intrusion by the government into a constitutionally protected area – such as a home or its curtilage – to gather information. *Id.* at 373 (citing *Jardines*, 569 U.S. at 6–7, 11). According to Johnson, the dog sniff outside his apartment constituted a Fourth Amendment search in both these respects: the dog's

---

[4] Subject to only a few exceptions, a warrantless search of a home is unreasonable and hence unconstitutional under the Fourth Amendment. *Kyllo*, 533 U.S. at 31. But that rule applies only if there has been a predicate "search" within the meaning of the Fourth Amendment. *Id.* Absent a search, in other words, the Fourth Amendment is not implicated at all, and the warrantless nature of the dog sniff at Johnson's apartment raises no Fourth Amendment concerns.

6

alert violated his reasonable expectation of privacy by revealing information about the contents of his home, and it was obtained by way of a physical intrusion into protected "curtilage" just outside his apartment door.

Our court has twice rejected this very pair of arguments in unpublished, non-precedential decisions. *See United States v. Makell*, 721 F. App'x 307, 308 (4th Cir. 2018) (dog sniff at apartment door in common hallway neither violates reasonable expectation of privacy nor intrudes on protected curtilage); *United States v. Legall*, 585 F. App'x 4, 5–6 (4th Cir. 2014) (same with respect to dog sniff at hotel room door). We reach the same result today. For the reasons given below, the dog sniff at Johnson's apartment door was not a Fourth Amendment search under either of the theories advanced by the defendant.

A.

We begin with Johnson's argument that the dog sniff violated his reasonable expectation of privacy because it revealed private information about the interior of his home. It is certainly true, as Johnson argues, that "the Fourth Amendment draws a firm line at the entrance to the house," and that individuals generally have a reasonable expectation of privacy as to what is inside and protected from public view. *Kyllo*, 533 U.S. at 40 (internal quotation marks and citation omitted); *id.* at 31–35. It follows, the Supreme Court held in *Kyllo*, that a Fourth Amendment search has occurred if the government uses a specialized device "not in general public use" – there, a thermal-imaging device that could detect heat patterns inside a house – to "explore details of the home that would previously have been unknowable without physical intrusion[.]" *Id.* at 40. And this case, Johnson says, is just like *Kyllo*: The police used a specially trained dog to learn details

7

about the interior of his home – specifically, the presence of illegal drugs – that they could not otherwise have discovered without entering his apartment.

We appreciate the logic of this argument. But there is a problem: When it comes to Fourth Amendment expectations of privacy, dog sniffs are different. *See United States v. Place*, 462 U.S. 696, 707 (1983) (explaining that in this context, "the canine sniff is *sui generis*"). As the Supreme Court has made clear, an individual's "interest in possessing contraband cannot be deemed 'legitimate.'" *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)). And a dog sniff, crucially, can "*only* reveal[]" just that – "the possession of contraband." *Id.* at 408–09. Unlike a visual inspection of the inside of a home, or the use of *Kyllo*'s thermal imaging device from the outside, *see* 533 U.S. at 38 (explaining that device might reveal "at what hour each night the lady of the house takes her daily sauna and bath"), an alert by a trained narcotics-detection dog "does not expose noncontraband items that otherwise would remain hidden from public view[.]" *Place*, 462 U.S. at 707. It exposes "only the presence or absence of narcotics, a contraband item" – which means that it cannot violate any reasonable expectation of privacy. *Id.* (holding that dog sniff of luggage is not Fourth Amendment search); *Caballes*, 543 U.S. at 409 (same for dog sniff of car); *cf. Jacobsen*, 466 U.S. at 122–24 (applying same reasoning to find that chemical test that could disclose only whether suspicious powder was an illegal drug was not Fourth Amendment search).

Johnson argues that we may look past this doctrine because his case involves a home, not a car or luggage, and homes are "afforded the most stringent Fourth Amendment protection." *See United States v. Brinkley*, 980 F.3d 377, 383–86 (4th Cir. 2020) (quoting

8

*United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)).[5]  But we read the Supreme Court's reasoning in *Place* and *Caballes* as categorical, not context-specific:  Because a dog sniff can reveal only the presence of contraband, and there is no reasonable expectation of privacy in contraband, a dog sniff is not a search – period.  Most other courts, though not all, have reached the same conclusion.  *See, e.g.*, *United States v. Scott*, 610 F.3d 1009, 1016 (8th Cir. 2010) (rejecting effort to distinguish *Caballes* and holding that dog sniff at apartment door violates no reasonable expectation of privacy); *Fitzgerald v. State*, 864 A.2d 1006, 1016 (Md. 2004) (holding that "*Place*'s rationale that dog sniffs are unique in their narrow yes/no determination" applies to dog sniffs at apartment doors); *but see United States v. Whitaker*, 820 F.3d 849, 852–53 (7th Cir. 2016) (holding that *Place* and *Caballes* are distinguishable and that dog sniff of home invades reasonable expectation of privacy).

We recognize that Justice Kagan, in a separate concurring opinion, has embraced the defendant's position that a dog sniff at the door of a home may violate a reasonable expectation of privacy.  *See Jardines*, 569 U.S. at 12–16 (Kagan, J., concurring).  But the Supreme Court has declined the opportunity to follow suit.  *Id.* at 11.  Unless and until the

---

[5] Johnson focuses on *Caballes* – considering a dog sniff of a car – and seeks to distinguish that case on the ground that there is a diminished expectation of privacy in automobiles.  *See Jardines*, 569 U.S. at 14 n.1 (Kagan, J., concurring).  Johnson has less to say about *Place*, involving a dog sniff of luggage.  Luggage often holds quite intimate contents, and individuals generally retain a full expectation of privacy in those contents.  Indeed, the Supreme Court has held that even the physical manipulation of soft luggage from the outside invades a reasonable expectation of privacy and constitutes a Fourth Amendment search.  *See Bond v. United States*, 529 U.S. 334, 336–39 (2000).

9

Court tells us otherwise, we consider ourselves bound by *Place* and *Caballes* to hold that the dog sniff at Johnson's apartment door violated no reasonable expectation of privacy.

### B.

Johnson's alternative argument draws on the property-based approach of *Jardines*, in which the Supreme Court held that a dog sniff conducted on the front porch of a house was a Fourth Amendment search. 569 U.S. at 5–9, 11–12. That was so, the Court reasoned, not because it violated a reasonable expectation of privacy, but because the police on the front porch had physically intruded into the "curtilage" of the home – the "area belonging to Jardines and immediately surrounding his house" – which is protected "as part of the home itself" under the Fourth Amendment. *Id.* at 5–6. An unlicensed intrusion into that constitutionally protected area to gather evidence, the Court held, is a "search" for Fourth Amendment purposes. *Id.* at 5–6, 11–12; *see also Collins v. Virginia*, 584 U.S. 586, 593 (2018) ("When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred.") (citing *Jardines*, 569 U.S. at 11)).

As the district court recognized, *Nelson*, 2022 WL 2484143, at *17–18, whether the dog sniff here was a search under *Jardines* turns on whether the area of the common hallway just outside Johnson's door qualifies, like Jardines's front porch, as protected "curtilage." In *United States v. Dunn*, 480 U.S. 294, 301 (1987), the Supreme Court provided us with four factors to consider in identifying curtilage: the "proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken

10

by the resident to protect the area from observation by people passing by." But we are not to apply the factors "mechanically." *Id.* Instead, the bottom-line question in every case is whether the area in question should be treated "as part of the home itself," bringing it within the "places and things" – "persons, houses, papers, and effects" – enumerated in and protected by the Fourth Amendment. *Jardines*, 569 U.S. at 6 (cleaned up); *see Dunn*, 480 U.S. at 301.

We considered a similar curtilage question in *Jackson*, 728 F.3d at 374, and concluded that an apartment's curtilage did not extend to a courtyard between apartment buildings used by all residents of an apartment complex. The parties in *Jackson* agreed that a patio immediately outside the defendant's apartment was part of the apartment's curtilage. *Id.* at 373. But that patio, we held, "marked the boundary between the particular property conveyed by lease to each tenant and the apartment complex's common property." *Id.* at 374. And that "common property," we reasoned, through which other residents had the right to walk, could not be "placed under the home's 'umbrella' of Fourth Amendment protection" under the *Dunn* factors. *Id.* (quoting *Dunn*, 480 U.S. at 301).

We think the same rationale applies to the "common property" now at issue – the hallway outside Johnson's apartment. Here, instead of a patio, it is Johnson's apartment door that "mark[s] the boundary" between his residence, protected as a home under the Fourth Amendment, and the "apartment complex's common property." *Id.* Johnson "had no property based right outside [his] apartment door." *Nelson*, 2022 WL 2484143, at *17. Instead, as the district court explained, that area was part of a common hallway, used regularly by other building residents and by building cleaning staff. *Id.* And it was not just

11

other residents and staff; despite locks at the front door, entry to the interior hallways was "not restricted . . . in any way" because building management "routinely" granted consent to enter on request. *Id.* at *17–18. Johnson could of course exclude any of those people from the *interior* of his apartment, but they all had a right to be in the common hallway *outside* his door. That takes the apartment hallway, like the courtyard in *Jackson*, outside the scope of the Fourth Amendment's protection of the home. *Jackson*, 728 F.3d at 374; *see United States v. Cruz Pagan*, 537 F.2d 554, 558 (1st Cir. 1976) (explaining that an apartment tenant's "dwelling cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control" (cleaned up)).

Johnson sees it differently, emphasizing that the police dog alerted at the "seam" of his apartment door, mere inches from the interior. According to Johnson, *Dunn*'s first factor – proximity of purported curtilage to the home – weighs so heavily in his favor that it is dispositive. Br. of Appellant at 24 (describing police as approaching "as close to [Johnson's] home as one could get without entering"). And it is true that this degree of proximity has been treated as highly relevant to the curtilage inquiry, including by the Ninth Circuit in the recent decision relied on by Johnson. *See, e.g.*, *Jardines*, 569 U.S. at 6–7 (describing front porch as within area "immediately surrounding" and "adjacent to" home); *Chong v. United States*, 112 F.4th 848, 852 (9th Cir. 2024) (treating as curtilage area of driveway "[j]ust one foot away from the home").

But the context of those cases is critically different: In those cases, the defendant owned or otherwise had the right to exclude others from the area immediately surrounding his dwelling. *See Jardines*, 569 U.S. at 5–6 (describing front porch as within area

12

"belonging to Jardines and immediately surrounding his house"); *Chong*, 112 F.4th at 852 (explaining that house was "owned by [defendant] Chong," who lived there with his extended family). The same is true of *Dunn* itself, in which the Supreme Court considered a "warrantless entry onto [the defendant's] ranch property," "completely encircled by a perimeter fence." 480 U.S. at 297. Applying what would become the "*Dunn* factors," the Court concluded that a barn located 60 yards from the ranch house, though still within the defendant's property, fell outside the home's curtilage. *Id.* at 302. What the *Dunn* factors measure, in other words, is which *part* of the area in which a defendant has a property-based interest qualifies as Fourth Amendment-protected curtilage. *Id.* at 300–03; *see also Oliver v. United States*, 466 U.S. 170, 176–79, 184 (1984) (holding that farmhouse's curtilage did not extend to "open fields" within defendant's farm property and from which he had the "right to exclude" others). Nothing about *Dunn* supports the proposition that close proximity to a home can convert *common* property, like a street or sidewalk – property open to others, from which the defendant has no right to exclude – into curtilage. *See Lindsey v. State*, 127 A.3d 627, 641–44 (Md. Ct. Spec. App. 2015) (explaining *Dunn* in similar terms).

Our holding aligns not only with *Jackson* but also with decisions from other courts recognizing the importance of a property-based "right to exclude" to the curtilage analysis. *See, e.g.*, *State v. Edstrom*, 916 N.W.2d 512, 520 (Minn. 2018) (hallway directly outside apartment door is not "curtilage" because tenant's right to exclude others from own apartment does not "extend to the common areas of the building"); *Lindsey*, 127 A.3d at 643; *United States v. Acosta*, 965 F.2d 1248, 1251–52 (3d Cir. 1992) (police entry into

13

hallway outside apartment door, in which defendant had an "easement of access," did not violate Fourth Amendment because the defendant "did not have the right to exclude others, nor did the record indicate that he had ever attempted to do so"); *Cruz Pagan*, 537 F.2d at 558 (apartment building parking garage is not "curtilage" because garage is not subject to tenant's control).[6]  It also puts us squarely within a general consensus that common areas shared by all tenants of an apartment building usually will not qualify as Fourth Amendment curtilage.  *See Nelson*, 2022 WL 2484143, at *18 (recognizing "majority approach"); *United States v. Brooks*, 645 F.3d 971, 975 (8th Cir. 2011) (staircase to basement shared by all tenants is not curtilage); *cf. United States v. Sweeney*, 821 F.3d 893, 902 (7th Cir. 2016) ("[T]here is generally no reasonable expectation of privacy in shared and common areas in multiple-dwelling residential buildings.").[7]

In sum, we agree with the district court that the common hallway outside Johnson's apartment door is not properly treated as "part of the home itself" for purposes of the Fourth

---

[6] Courts sometimes use the phrases "right to exclude" and "exclusive control" (or some variant thereof) more or less interchangeably.  *See, e.g.*, *Acosta*, 965 F.2d at 1252.  We think "right to exclude" is more to the point and less prone to misunderstanding.  Mr. Jardines, for instance, had a "right to exclude" from his front porch, even if he shared that right with a Mrs. Jardines and thus lacked "exclusive" control.

[7] In the only contrary authority cited by the defendant (or located by us), the Supreme Court of Illinois held that the police intruded on protected curtilage when they conducted a dog sniff at an apartment door from a common hallway, relying on *Jardines*.  *People v. Bonilla*, 120 N.E.3d 930, 938–39 (Ill. 2018).  The court in that case did not discuss the fact that the defendant in *Jardines*, as the owner of the property, had a right to exclude others from his front porch.  With respect, we think that this property-based concept is important to what the Supreme Court has described as *Jardines*'s "traditional property-based understanding of the Fourth Amendment."  569 U.S. at 11.

14

Amendment. *Jardines*, 569 U.S. at 6 (quoting *Oliver*, 466 U.S. at 180). That is not, of course, because Johnson rents his home instead of owning it; Johnson has the same right to "retreat into his own home and there be free from unreasonable governmental intrusion," *id.* (internal quotation marks and citation omitted), as any homeowner. It is because Johnson has "no[] . . . right to exclude others" from the hallway *outside* his home, and there is no indication "that he had ever attempted to do so." *Acosta*, 965 F.2d at 1252; *Nelson*, 2022 WL 2484143, at *16 (noting that at time of dog sniff, "there was nothing in front of the apartment door (no door mat or other indicia of control by the occupant[])").

We go no further in deciding the case before us today. Multi-dwelling units come in all kinds of configurations, and some may include "common" areas different from the apartment hallway here or the courtyard in *Jackson*. *See United States v. Hopkins*, 824 F.3d 726, 732 (8th Cir. 2016) (walkway leading to two townhouse doorways – "'common' only to [the defendant] and his immediate neighbor" – falls within curtilage). Other cases may present different factual twists. *Cf. United States v. Lewis*, 62 F.4th 733, 742–43 (2d Cir. 2023) (calling for individualized and fact-specific approach to assessing whether defendant has reasonable expectation of privacy in porch of multi-unit dwelling, including attention to whether porch was generally open to building visitors). We hold only that on the facts as found by the district court and disputed by neither party, the police did not intrude on Fourth Amendment-protected curtilage when they conducted a dog sniff in the common hallway just outside Johnson's apartment door.

### III.

For the reasons given above, we affirm the judgment of the district court.

*AFFIRMED*